HENDRIX v. BLACK.

Opinion delivered February 18, 1918.

1. TRESPASS—LIABILITY OF ONE WHO AUTHORIZES ANOTHER TO COMMIT A TRESPASS.—One who authorizes the commission of a trespass is equally responsible with him by whose act the trespass is committed.

2. TRESPASS—SALE OF TIMBER UPON LAND OF ANOTHER.—Appellant was in the business of purchasing tax titles and selling the timber rights on the land so purchased. He purchased land belonging to appellee under a void tax sale and sold the timber thereon to one

A., who cut it. *Held*, appellant was on notice of appellee's title, and was liable to appellee for damages.

3. TRESPASS—CUTTING TIMBER ON ANOTHER'S LAND.—A person who sells the right to cut timber on the land of another without the latter's consent, is liable for the trespass committed by his purchaser in cutting and removing the timber, and a claim of color of title (such as a void tax deed) is no justification.

4. PENALTIES—EQUITY JURISDICTION.—Equity will not aid in the enforcement of penalties.

Appeal from Ashley Chancery Court; *Zachariah T. Wood*, Chancellor; affirmed.

*U. J. Cone*, for appellant.

1. Appellant claimed and sold the timber in good faith under a tax deed. He had no notice of the confirmation of appellee's title, or that his tax deed was void.

No fraud is proven nor conspiracy to defraud shown. The claim for damages is not sustained by the evidence. 8 Cyc. 622, 647 C, 658, 691-2; 19 Ann. Cases, 1254 and note; 20 Ark. 224; 3 Enc. Ev. 434 and notes 88, 89, 90; 16 Ind. 512; 5 Ann. Cas. 374; 50 Vt. 494; 11 *Id.* 615; 76 N. Y. 284; 47 Mich. 572; 15 N. Y. S. 528.

*Williamson & Williamson*, for appellee.

1. The decree and findings are correct as to the title. 94 Ark. 58; 98 *Id.* 266. Appellant's tax title was void and so declared by the court. He was a party and bound by the confirmation decree and can not impeach it collaterally. Kirby's Digest, § 4425 and note (e); 125 Ark. 301; 121 *Id.* 474.

2. He was liable for the trespass. 18 Tex. 228; 90 S. W. 860; 15 Ark. 452; 116 *Id.* 206; 38 Cyc. 1041 and notes; 43 Ark. 449; 129 N. C. 149; 39 S. E. 746; 22 Vt. 338; 78 Me. 260; 97 Ala. 627; 92 Ky. 574; 17 Minn. 200; 23 Mo. 434; 12 Wend (N. Y.) 39; 123 Penn. St. 62; 10 Am. St. 512.

3. The evidence is sufficient to sustain the findings. 95 Ark. 482; 1 Enc. Dig. Ark. Rep. 377-8.

4. Treble damages should have been allowed for the wilful trespass. Kirby's Digest, § 7976-8; 123 Penn. St. 62; 10 Am. St. 512; 96 Ark. 87; 116 *Id.* 206.

WOOD, J.   Appellee instituted this suit against the appellant, alleging that during 1912 and until July 18, 1913, he was the owner in fee of a certain tract of land in Ashley County, Arkansas, on which last named date he sold the land in suit, together with other lands, to one Josiah Grace; that Hendrix had asserted some claim of title to the land, and that in January, 1913, the appellee had instituted suit for confirmation of title and had made Hendrix a party to the suit; that Hendrix, with full knowledge of appellee's title and knowing that he himself had no title to the lands, had entered into a conspiracy with one E. D. Edwards to defraud appellee; that in pursuance of such conspiracy Hendrix conveyed the land, or the timber thereon, to Edwards in order to enable Edwards to cut and remove the timber under pretense of being the owner thereof; that Edwards was insolvent and Hendrix well knew such to be the fact; that on the 28th day of May, 1913, appellee procured a decree of confirmation quieting title in him; that notwithstanding this fact, Edwards and his employees, at the instigation of Hendrix, cut and removed timber from the land to the value of $1,813.18; that after the land was denuded of its timber appellee's vendee, Grace, who had purchased the land, refused to keep the same and reconveyed the same to appellee.

Appellee alleged that he brought the suit in chancery court so that the fraud might be uncovered, and that the appellant Hendrix might be held to account to him for his fraudulent acts and schemes, and he prayed that a master be appointed to state an account as to the amount of timber cut through the fraudulent acts of Hendrix, and that he have a decree for his damages, and for all general and equitable relief.   He prayed for treble damages.

Appellant answered separately, denying the title of the appellee and the alleged sale to Grace.   He set up title in himself under the clerk's tax deed.   He denied that he had been made a party to the confirmation suit of the appellee and denied the other allegations of the complaint as to conspiracy.   Admitted that he had sold the

timber to Edwards, and denied that Edwards was insolvent. He admitted that a confirmation decree had been rendered in the Ashley chancery court in favor of the appellee, but alleged that appellant was not a party to the suit for confirmation, and set up that same was void and a fraud upon the appellant.

Edwards answered, denying that there was any conspiracy between himself and Hendrix to remove the timber from the land. He denied appellee's title to the land. He set up that Hendrix owned the land in controversy under a clerk's tax deed, and that on August 14, 1913, Hendrix deeded all the timber on the land to him (Edwards), and alleged that under his deed from Hendrix he had a right to cut and remove the timber from the land. He set up that Black and Grace had entered into a conspiracy to defraud him (Edwards) out of his timber and to prevent his further cutting of any timber on the land; that Black and Grace, by connivance and fraud, had procured a confirmation decree, and that he relied upon Grace's representations to him (Edwards) that he had the right to cut and remove the timber, and that Grace, by making such false representations, had prevented him (Edwards) from cutting the timber, to the latter's damage in the sum of $500. Edwards asked that a master be appointed and for an accounting, and made Grace also a party defendant to his cross-complainant.

Grace answered the cross-complaint of Edwards, denying each and every material allegation thereof; alleged that he had no interest in the result of the suit, and prayed that the cross-complaint of Edwards be dismissed as against him, and for all proper relief.

The testimony in the record is exceedingly voluminous, and it could serve no useful purpose to set out and discuss it in detail. The facts, in brief, as we gather them from the record, are substantially as follows:

The land upon which the alleged trespass was committed is described as the southwest ¼ of section 34, township 17 south, range 4 west. This land, in 1901, was sold for the taxes of 1900. This tax sale was void. The

county clerk, on June 23, 1903, executed to one J. C. Norman a clerk's tax deed to the land. On May 20, 1908, in a suit pending in the Ashley chancery court in which J. C. Norman was a party, the tax deed of the clerk under which Norman set up a claim of title was by decree of the court held to be void, and the title was confirmed to be in those under whom the appellee claims. Notwithstanding his tax deed was declared to be void by the chancery court, J. C. Norman thereafter assigned his certificate of purchase to the appellant Hendrix, and on the 3rd day of June, 1912, the clerk of Ashley County issued to J. M. Hendrix, as assignee of J. C. Norman, another tax deed, based on the same tax sale which the chancery court had declared to be void. This is the title under which Hendrix claims. There is in the record a decree of the Ashley Chancery Court, entered May 23, 1913, in which J. M. Hendrix was made a party. Among other things, that decree recites that J. M. Hendrix took no title by virtue of his deed from Hogan Oliver, the clerk, "and the same is hereby canceled, set aside and held for naught as a cloud upon petitioner's title." The decree further recites that "the title of said petitioner Louis C. Black, in and to these lands (the tract above described) is now unimpeachable," and appellee's title was then for the second time duly quieted and confirmed.

Hendrix testified that he was never served with process in the confirmation suit, and denied that he had entered into a conspiracy with Edwards. He stated that in 1911 and 1912 Edwards did some work for him and he owed Edwards for the work in the sum of $160.00, and sold him the timber on the land mentioned, giving him a year in which to remove it, that being a fair value for the timber; did not know Black was claiming the land. Stated that he owned as much as 640 acres of land in two miles from the land in controversy, and had sold the timber to different parties by the thousand and by the acre, at a dollar per acre. He had owned many tracts over the country and never received over $2.00 per acre for timber except for some very thick pine north of

Snyder. He had never been on the land before the present suit was instituted. He stated that he had paid the taxes on the land for the year 1912; that in October, 1912, he had sold the land to Charles Brown, of St. Louis. And on cross-examination he testified as follows: "I got tax deed under certificate issued to J. C. Norman and transferred to me, with other certificates aggregating about 440 acres. I have bought quite a number of tax titles in Ashley County, and am reasonably familiar with the record system. I am familiar with the methods of investigating titles to lands, have had a good deal of experience along this line. His testimony further shows that he was familiar with a set of abstract books of Ashley County. He bought, including the land in controversy, from J. C. Norman, certificates of purchase of 440 acres and did not remember the amount he paid. I did not investigate the record of the sale under which I claimed, understanding a tax sale to be good and valid until set aside by the courts." He said he had never estimated the timber or been over the land when he sold it to Edwards, and had never cleared or cultivated any of it, only owning it four or five months. Land like that is damaged by cutting to the value of the timber cut, which depends upon its grade.

On the 14th day of September, 1912, Hendrix made Edwards a quit-claim deed to the timber on the land over 12 inches in diameter. Edwards testified: Hendrix owed him $160.00 for work and sold him the timber to pay for same. Hendrix did not have anything to do with the cutting of the timber or directing the handling of it, and never received any of the proceeds.

It thus appears that the appellant, eleven years after the void tax sale, and four years after the sale had been judicially determined and declared to be void, bought from J. C. Norman, whose deed based upon the void sale had been canceled, certificates of tax purchase including the tract of land in suit. After his purchase appellant induced the county clerk of Ashley County to

issue him a tax deed to this land based on the same sale that had been declared void.

Appellant was in the business of buying tax titles. He was familiar with the records of Ashley County, including the set of abstract books showing the land titles. He lived in Hamburg, the county seat. He made no investigation of these titles to ascertain whether the deed had already been issued or whether the deed, if issued, had already been declared void because of the void tax sale. He bought certificates of purchase calling for a large body of land. He testified that he did not investigate the records to ascertain whether any of the tax titles of land purchased by him were good. He assumed "that a tax sale is good and valid until set aside by the court."

Now, being familiar with the records and methods to be pursued for ascertaining the validity of titles in Ashley County it is obvious that if the appellant had made even a most cursory examination of the records he would have learned the facts connected with this tax title. The only fair and reasonable inference to be drawn from his testimony is that he did not make the investigation because he did not wish to do so. He was a tax title speculator buying and selling these titles and selling the timber on lands acquired through tax titles. His attitude would not have been so vulnerable nor his conduct so censurable if he had contented himself simply with buying and selling tax titles. For in that case there would not have been necessarily the intention to damage the freehold and thus injure the true owner of the land. But when appellant bought these titles without investigation and proceeded forthwith to sell the timber on the lands and to grant licenses to enter upon and denude the lands of their timber, this indicated his purpose to commit waste and trespass upon the freehold.

The appellant must be held to have had knowledge of that which the slightest diligence on his part would have discovered. The records were at hand and he was thoroughly familiar with them. Therefore under the circumstances he must be held to have known that when

he purchased certificates from Norman and when afterwards he induced the clerk to execute him a deed based on such certificate that he acquired no title. And when he granted to Edwards a license to.enter upon and denude the land of its timber he must be held to have known that such license was void and conferred no rights on Edwards. In short, the facts fully justified the chancellor in finding that the acts of Edwards under the circumstances were trespasses upon the appellee's land; that these acts of Edwards were also the acts of the appellant and that the appellant through Edwards committed the trespass upon the appellee's land. "Those who authorize the commission of a trespass are equally responsible as those by whose acts the trespass is committed." *State of Maine* v. *Jesse S. Smith and others,* 78 Maine, 260.

In *Sanborn* v. *Sturtevant,* 17 Minn. 174, it is held, quoting syllabus, "One who, without the owner's consent, sells the right to cut trees standing and growing on the land of another, is liable for the trespass committed by his purchasers in cutting and removing them, and a claim or color of title (as a void tax deed),.is no justification." See, also, 38 Cyc. 1041, notes, and other cases cited in the appellee's brief.

The chancellor found that the appellee was entitled to single damages against appellant and Edwards in the sum of $1,000.00 and entered decree for that sum. The question as to the amount of the appellee's damage was purely one of fact. It could serve no useful purpose as a precedent to set out and discuss in detail the facts on this issue. The finding of the chancellor is sustained by the preponderance of the evidence.

The decree, therefore, awarding appellee single damages is affirmed.

The appellee took a cross-appeal and contends here that the court erred in not entering a decree for treble damages. But treble damages in the statute (Sec. 7976, Kirby), are in the nature of a penalty. This suit is one that was instituted in, and proceeded to final hearing be-

fore the chancery court. "Courts of equity will not aid in the enforcement of penalties." *Cooley* v. *Lovewell,* 95 Ark. 567, 568.

The court did not err, therefore, in not awarding the appellee treble damages. The decree of the chancery court is in all things correct and the judgment is affirmed.