Argued January 19, affirmed March 16, 1955

# KINZUA LUMBER COMPANY *v.*
## DAGGETT ET AL.
281 P. 2d 221

*Bruce Spaulding* argued the cause for appellants. On the brief were Wilbur, Mautz, Souther & Spaulding and Gordon Moore, all of Portland.

*George H. Brewster,* Redmond, and *George L. Dukek,* Fossil, argued the cause and filed a brief for respondent.

Before WARNER, Chief Justice, and ROSSMAN, LATOURETTE and PERRY, Justices.

ROSSMAN, J.

This is an appeal by the defendants from a decree of the circuit court which granted the plaintiff (1) an injunction against further trespasses by the defendants, and (2) a judgment against them in the sum of $1,517.94. In explanation of the judgment, we quote the following from the challenged decree: ''The plaintiff is entitled to double damages for timber removed, or the sum of $1,462 and the sum of $55.94.'' The sum of $55.94 last mentioned is not in contest and represents one half of the cost of (1) ridding the land of slashings, and (2) surveying a part of the land as well as cruising some of its timber.

This cause was submitted to the court upon a stipulation, from which we take the following:

"It is stipulated by and between plaintiff and defendants * * * that the plaintiff was at the times mentioned in the complaint, the owner of the timber and land described and mentioned in the complaint;

"That at the times mentioned in the complaint, the defendants cut upon the lands referred to in

the complaint, timber belonging to the plaintiff to the extent of 35,560 board feet of Ponderosa pine, of the value of $25.00 a thousand; and 8670 feet of fir of the value of $7.50 per thousand; totaling $889.00 for the pine and $65.00 for the fir;

\* \* \* \* \*

"It is further stipulated by and between plaintiff through its attorneys and the defendants through their attorneys, that this is a suit in equity and the question of jurisdiction as a suit in equity shall not be contested.

\* \* \* \* \*

"It is further stipulated that the Court in its decree shall issue a permanent restraining order against the continuance of the defendants' acts in trespass.

"It is further stipulated that the trespass was inadvertent, but wrongful and without authority.

"It is further stipulated that the question of double damages shall be left for the determination of the Court to determine whether or not in a suit in equity, the statutory provisions of sections 8406 and 8407, Oregon Compiled Laws Annotated, are applicable, or whether plaintiff can only recover single damages."

According to the stipulation, the defendants returned to the plaintiff logs of the value of $223 which they had cut off its land. The two above amounts of $889 and $65 total $954. From that total the decree deducted the sum of $223 just mentioned, leaving a balance of $731. It doubled the latter and thus got $1,462, to which it added $55.94, which is explained in the first of the above paragraphs. Thereby was had $1,517.94, the amount of the challenged judgment. None of the items is in dispute. The defendants challenge nothing except the award of the enhanced, or accumulative, damages. Although the only issue submitted by this appeal is whether or not a court of

equity may double the damages awarded for a wrongful cutting of trees, we gave the foregoing explanation in order to present the background of the issue.

Sections 8-406 and 8-407, OCLA, mentioned in the stipulation, are now ORS 105.810 and 105.815. The former makes provision that judgment "for treble the amount of damages claimed, or assessed for the trespass" shall be entered against any person who

> "without lawful authority, wilfully injures or severs from the land of another any produce thereof or cuts down, girdles or otherwise injures or carries off any tree, timber or shrub on the land of another person, * * * or on the street or highway in front of any person's house, or in the village, town or city lot, or cultivated grounds, * * *."

That section of our laws further says:

> "* * * In any such action, upon plaintiff's proof of his ownership of the premises and the commission by the defendant of any of the acts mentioned in this section, it is prima facie evidence that the acts were committed by the defendant wilfully, intentionally and without plaintiff's consent."

It will be observed that ORS 105.810 is applicable when the wrongful act was done "wilfully."

ORS 105.815 says:

> "If, upon the trial of an action included in ORS 105.810, it appears that the trespass was casual or involuntary, or that the defendant had probable cause to believe that the land on which the trespass was committed was his own or the land of the person in whose service or by whose direction the act was done, or that the tree or timber was taken from uninclosed woodland for the purpose of repairing any public highway or bridge upon the land or adjoining it, judgment shall be given for double damages."

Since the stipulation states that the defendants' trespass was "inadvertent, but wrongful," it came within the purview of ORS 105.815. No relief is asked under ORS 105.810.

The stipulation, which is quoted in a preceding paragraph, declares, as will be recalled, that this suit is in equity and that the plaintiff is entitled to an injunction prohibiting further trespasses. Therefore, the defendants do not challenge the jurisdiction of the court which entered the attacked decree.

The plaintiff argues that the double damages for which ORS 105.815 makes provision are remedial and not penal. Therefore, according to it, a court of equity may enter judgment for the recovery of the enhanced amount. The defendants contend that any sum over and above actual damages given to the owner of a tree which a wrongdoer felled is a penalty. They argue that the double damages allowed by ORS 105.815 are penal, and, having taken that position, claim that equity will not grant a judgment for their recovery. *Longview Fibre Co. v. Johnston,* 193 Or 385, 238 P2d 722, and *Stott v. J. Al. Pattison Lumber Co.,* 95 Or 604, 188 P 414, affirmed decrees which awarded enhanced damages for the wrongful felling of trees. In the former, the damages were doubled; in the second, they were trebled. However the right of the chancellor to award accumulative damages was not challenged. Although ORS 105.815 says that "judgment shall be given for double damages," the defendants believe that a court of equity should read the word "shall" as though it were "may".

From the foregoing, it appears that the issue submitted by this appeal is this: is the enhanced sum for which ORS 105.815 makes provision a penalty or is it compensatory in nature. If it is the latter, it will be

unnecessary to determine the issue as to whether or not a court of equity can render judgment for the amount of a penalty.

We take the following from Vold, Are Threefold Damages Under the Anti-Trust Act Penal or Compensatory?, 28 Ky L Jour 117:

"Arguments which seek to penalize the enforcement of statutory threefold damage provisions by characterizing them as penalties call for especially attentive scrutiny with regard to the assumptions from which their course of reasoning begins. The term 'damages' and the term 'penalty' are frequently used in a wide range of uncertain and varying meanings. This is true not only of popular speech and of much of the available legal literature but also of many of the judicial opinions themselves."

ORS 105.815, which the defendants claim is a penal statute, employs no term such a "wilful" or "intentional" which are often found in statutes which impose penalties. Sometimes the presence in a statute under analysis of a word such as "malicious", which is peculiarly appropriate to punitory measures, helps to identify its nature. *Richards et al. v. Sanderson,* 39 Colo 270, 89 P. 769. Far from employing words that evince a purpose to deal with wanton conduct and punish it, ORS 105.815 plainly indicates a legislative design for its application in cases wherein the offender had no evil purpose. For example, the section speaks of trespasses which are "casual or involuntary" and encompasses a person who "had probable cause to believe that the land on which the trespass was committed was his own." It includes a situation in which the timber was taken from uninclosed land for the purpose of repairing an adjacent public road or bridge. The section is concerned solely with the taking, and not

with the state of mind of the offender. If the taking was attended with a malign purpose, the wrongdoer is subject to ORS 105.810 which renders material the intent of the wrongdoer.

■ Generally, punitive damages are sums of money that are awarded in addition to actual damages in order to punish the offender. In our use of the term "actual damages" we mean the sum which is recoverable under the common rules governing the award of damages. Punitive damages are assessed against the wrongdoer because the law disapproves of the conduct in which he engaged and seeks to stamp it out. Cases in which punitive damages are sought have a two-fold aspect: (a) the recovery of redress for an injury suffered by the victim, and (b) the amercement of the wrongdoer. Obviously, only those can recover damages who have in fact been injured, and, likewise, only those can be punished who have done something which the state subjects to the imposition of a penalty. Since the defendants argue that the double damages for which ORS 105.815 makes provision are punitive, it is necessary to examine that section of our laws for the purpose of determining whether or not its aim is to punish the conduct of the individuals to whom it is applicable. In other words, does ORS 105.815 manifest a tenet that one whose "trespass was casual or involuntary" or who felled a tree when he "had probable cause to believe that the land on which the trespass was committed was his own" is penal and subject to punishment in an amount determined by the legislature. Procedure which enables the victim of a wrong to recover, not only his actual damages, but also a penalty, merges into the single action the aggrieved's claim for redress and the state's design to punish the offender.

From the foregoing we see that ORS 105.810 con-

tains language of the character which is generally appropriate to penal statutes, but ORS 105.815, far from containing expressions of that kind, repels any inference that it is concerned with mens rea. Since penal-denoting words are absent from ORS 105.815 but are present in ORS 105.810, which authorizes the assessment of treble damages, it would be unseemly for this court to import, by the process of construction, the word "wilful" or any equivalent of it into ORS 105.815. Therefore, we are not at liberty to adopt the course taken in *Kramer v. Goodlander*, 98 Pa St 353, *McDonald v. Montana Wood Co.*, 14 Mon 88, 35 P 668, and *Oconto County v. Union Manufacturing Co.*, 190 Wis 44, 208 NW 989, upon which the defendants rely. In each of the first two of the cited cases, the court interpreted the statute before it as meaning that the multiple damages for which the statute made provision were recoverable only in the event that trees were destroyed wilfully or as the result of the wrongdoer's careless inattention to boundary lines. In the third of the cited cases, the statute did not pertain to trees, but authorized trebling of damages against anyone who injured a public highway by diverting the flow of a creek. The court held that multiple recovery was not authorized unless the diverter's conduct was wilful. None of the three statutes employed the words "wilful", "intentional" or "careless". Nevertheless, by construction, the courts reached the conclusions above indicated. However, the courts were not confronted with companion measures like ORS 105.810 and 105.815 which discriminate in the purposes of those who trespass. A later Wisconsin decision to the same effect as *Oconto v. Union Manufacturing Company,* supra, is *Chrome Plating Company v. Wisconsin Electric Power Company,* 241 Wis 554, 6 NW2d 692. In our own Reports

one can find decisions which employ reasoning comparable to that of the cases just reviewed. A recent one is *Wilson et ux. v. Kruse,* 199 Or 1, 258 P2d 112, which held that treble damages are recoverable under ORS 105.805 only "when the waste was wilfully, wantonly or maliciously committed." ORS 105.805 contains none of those adverbs. Having placed that construction upon the section of our laws just mentioned, the decision termed the recovery "punitive or exemplary."

■ Since ORS 105.810 makes provision for the recovery of treble damages from anyone who "wilfully injures" a tree, and, going on, prescribes the manner in which the evil purpose may be established, we cannot, by the process of judicial interpretation, infuse into ORS 105.815 the word "wilful". Accordingly, ORS 105.815 deals with trespassers who have no evil intent.

The defendants, in arguing that the double damages which are recoverable under ORS 105.815 are penal, call our attention to no words whatever which suggest that one who inadvertently cuts a tree should be punished. We know of no reason for believing that the legislature, in adopting ORS 105.815, viewed the "casual or involuntary" cutting of trees with such grave aversion that it wanted those who felled trees in that manner subjected to a penalty.

Some legislation subjects a wrongdoer to a penalty, even though he had no evil purpose when his conduct fell short of the statutory demands. For example, legislation governing railroad rates may subject a railroad to a multiple recovery if it charges more than the prescribed rate. Laws of a similar character may subject an insurer to the payment of a claimant's attorney fee if it fails to settle a claim within a prescribed period

and if it develops that the claim was just. Good reasons can be given for a belief that the accumulative damages recoverable in cases of the kind just mentioned represent the award of special or extraordinary damages. See Vold, Are Threefold Damages Under the Anti-Trust Act Penal or Compensatory?, 28 Ky Law Jour 117. In the instance of the railroad rates, the recovery of double the amount of the overcharge may be comparable to liquidated damages in which provision is made for items beyond those represented by actual damages. Further, the legislature, in adopting measures of the kind just suggested, may be persuaded to make provision for the recovery of the enhanced amount by a belief that if a shipper is granted judgment for nothing more than the overcharge, he will have nothing left for himself after he has paid his attorney fee. In other words, the accumulative damages may represent an effort to award adequate damages. In all likelihood, one purpose of statutes of the kind we are now reviewing is to give the victim an incentive, through an enhanced recovery, to assert his rights and provide him with the means of doing so. The payment of enhanced, special and extraordinary damages may incidentally have the same effect upon the wrongdoer as when he is required to pay smart money, but if the primary purpose is to secure for the victim adequate damages, incidental consequences cannot change the nature of the award. Whether legislation of the above kind constitutes the imposition of a penalty or the award of adequate damages is dependent, we infer, upon the meaning which is given to the words "penalty" and "damages".

If the enhanced recovery for which ORS 105.815 makes provision is not penal in nature, it may be that it is compensatory. We shall presently consider de-

cisions rendered by courts in other jurisdictions which construed legislation similar to ORS 105.815, but before so doing we will give attention to some general considerations.

According to *Moss v. Peoples California Hydro-Electric Corp.*, 134 Or 227, 293 P 606, the rule of damages which is generally employed in cases based upon the wrongful cutting of trees which have no unique value is the difference between the market value of the land immediately before and immediately after the trespass. In the case just cited, the trees which the defendant cut were shade or ornamental trees which stood upon a residential property. The same rule has been employed in the instance of trees which have value on account of the logs which they yield. However, some courts, in lieu of determining damages by the rule just mentioned, measure the damage by ascertaining the value of the trees. See *Moss v. Peoples California Hydro-Electric Corp.*, supra, and 25 CJS, Damages, § 85(c).

It may be that when the legislature adopted ORS 105.815 it believed that when an ower of land, from which another wrongfully cut trees, recovered judgment for the value of the trees, or for the difference in the value of the land immediately before and immediately after the taking, he was not made whole. If it so believed it could have given good reasons in support of its belief, as we will now show.

■ Although the general purpose of the law is to award just compensation to the victim of a wrong, it is well known that full compensation is not always made. The law of damages does not subject the wrongdoer to liability for all of the harmful consequences of his act, but only for the proximate results. The proximate result rule yields much less for the victim than if he were

given the benefit of a harmful consequences rule. Further, the very fact that the victim must institute an action for the recovery of damages subjects him to inconveniences, annoyances, preparation for trial, loss of time and the payment of an attorney fee, for all of which he will receive no compensation except an allowance of the nominal sum which represents costs. Let us now proceed directly to the matter of trees. Trees have long lives and, generally, more than a half century of growth must take place before they approach maturity. If they are felled when they are mature and when a mill or good transportation is nearby, the return will be much greater than if they are felled when those favorable conditions are absent. During the life of a tree, several cycles of good prices and low prices may succeed one another. The value of a tree is largely dependent upon the current economic cycle. If a wrongdoer, in a period of adverse market prices, destroyed immature trees in a remote area far removed from an access road, the owner might face a difficult problem of proving his damages, and in the end might receive a judgment in an amount far less than his loss. A wrongful act committed under such circumstances might deprive the owner of an asset which, years hence, under favorable conditions, would have made him a wealthy man. The problem of ascertaining the value of a tree is more difficult than that of finding the value of other articles which have shorter lives and which are not rooted to the soil.

Considerations of the above kind may have caused the legislature to adopt ORS 105.815 in an effort to give the victim of the wrongful act adequate damages. The legislature may have reasoned that actual damages as allotted to the owner under the rule stated in *Moss v. Peoples Hydro-Electric Corp.*, supra, frequently are

not enough to enable him to pay his attorney reasonable compensation and have something left for himself. It will be noticed that ORS 105.815 accepts as the base for the admeasurement of the damages which it awards, the victim's actual damages. It does not subject the wrongdoer to the loose method of compiling the award which is employed in the computation of exemplary damages. Attorneys, in determining the size of their fees, frequently take into consideration the amount of the verdict and, hence, if the legislature, in adopting ORS 105.815, desired to make it possible for the victim to pay his attorney and have something left for himself, it had an example in the practice employed by attorneys.

Before reaching a conclusion as to whether double damages constitute a penalty or compensation, we will give attention to the decisions of other courts which passed upon situations somewhat similar to that before us.

*Guild v. Prentis,* 83 Vt 212, 74 A 1115, was governed by a statute which allowed the recovery of treble damages for the wrongful cutting of trees. The statute contained this provision:

"* * * but if, upon trial, it appears that the defendant acted through mistake, or had good reason to believe that the trees, timber or underwood were on his land, the plaintiff shall recover single damages only, * * *."

According to its findings, the jury did not believe that the defendants acted through mistake or had good reason to believe that they could rightly cut the trees. The court said:

"* * * the statute which we are now construing is not a penal one, and this action is not a penal action."

Presently it added:

> "The act under which this suit was brought was passed in 1849, * * *. So far as it has any reference to a case like this, it has been already recited, and, as has been seen, it is divorced from any penal provisions, unless statutes permitting the recovery of treble or double damages are necessarily penal."

In reaching its conclusion, the court depended upon *Burnett v. Ward,* 42 Vt 80, which construed a statute for double damages as nonpenal. According to the opinion in the case under review, *Burnett v. Ward* reasoned that

> "in such cases the recovery of compensation is the main purpose of the action, that the right to recover cumulative damages is incidental, and that such statutes are to be considered as remedial, and not as penal."

Referring further to *Burnett v. Ward,* the court said:

> "* * * To the claim that the allowance of double damages makes the action penal the answer of the court, speaking by Judge Peck, is that such an allowance does not have that effect, any more than the right of the jury in actions of tort to allow exemplary damages in some circumstances makes such actions penal. The reasoning in Burnett v. Ward, 42 Vt. 80, is conclusive. It is all one whether the enhancement of actual damages, as damages, is provided for by the Legislature, or is effected by the jury, in proper cases, in accordance with the common law."

Thus we see that in the Guild case the court reasoned that, since the statute imposed no criminal sanction, the provision for treble damages was not penal. The court deemed the statute remedial as distinguished from penal because it provided the victim of the wrong with a remedy. It surmised that the allowance of double damages no more made the action penal than does the allowance of exemplary damages in non-

statutory actions. It is apparent that the court used the word "penal" in a restricted sense and in accordance with the manner in which that term is used in the criminal law.

A recent Connecticut decision to the same effect as the Guild opinion is *Banks v. Watrous,* 134 Conn 592, 59 A2d 723, 4 ALR2d 286. It construed the Connecticut statute then in effect, governing the award of damages for the wrongful cutting of trees, which was substantially similar to the one which received comment in the Guild case. The decision, written by Chief Justice Maltbie, said:

"* * * The statute, like others in the statute book which provide damages for wrongful conduct in excess of those ordinarily recoverable, is not a penal statute, Plumb v. Griffin, 74 Conn 132, 135, 50 A 1; Cristilly v. Warner, 87 Conn 461, 468, 88 A 711, 51 LRS NS 415; it affords the basis of a civil action in which the damages, 'assessed because of and with reference to the degree of the defendant's culpability may be, and generally are, compensatory in their nature, although they embrace injuries or expenses not included in strict legal damages.' Cristilly v. Warner, supra, 87 Conn 471, 88 A 715."

*Michigan Land & Iron Co. v. Deer Lake Co.,* 60 Mich 143, 27 NW 10, 1 Am St 491, construed as punitory a Michigan statute authorizing the recovery of treble damages. It held that treble damages were recoverable only in the event that the defendant's wrongful cutting of trees was wilful. The statute provided:

"Every person who shall cut down or carry off any wood, underwood, trees or timber, * * * on the land of any other person, without the leave of the owner thereof * * * shall be liable to the owner of such land, * * * in three times the amount of damages which shall be assessed therefor

in an action of trespass, * * *. If upon the trial of any such action, it shall appear that the trespass was casual and involuntary, or that the defendant had probable cause to believe that the land on which such trespass was committed was his own, or that such wood, trees, or timber were taken for the purpose of making or repairing any public road or bridge, judgment shall be given to recover only the single damages assessed.''

The court ruled:

''Treble damages under this statute are in their nature punitory, and it cannot be assumed that they were designed to be inflicted in any case not involving something like wilful wrong. Such damages cannot arise from mere neglect, but must come from active misconduct.''

It will be observed that the Michigan statute, as construed by the court, segregated, in a manner suggestive of ours, wrongful timber falling into two categories: (a) wilful trespass, and (b) nonwilful trespass. Since such was the statute's treatment of wrongful tree falling, the court deemed that the award of multiple damages was punitory in nature.

*Hendrix v. Black,* 132 Ark 473, 201 SW 283, LRA 1918D 217, was concerned with an Arkansas statute which authorized the recovery of treble damages for a wrongful taking of timber. The decision does not indicate whether the statute required the trespasser to have been prompted by wilfulness or other wanton design. The only part of the decision which is material to our inquiry follows:

''The appellee took cross-appeal and contends that the court erred in not entering a decree for treble damages. But treble damages in the statute (Kirby's Dig., §7976) are in the nature of a penalty.''

The court did not state the reason for its conclusion.

We take the following from *Chase v. Andrews,* 145 Okl 300, 291 P 114:

"The second proposition presented by the defendant is more serious. Section 6007, C.O.S. 1921, provides: 'for wrongful injuries to timber, trees or underwood upon the land of another, or removal thereof, the measure of damages is three times such a sum as would compensate for the actual detriment, except where the trespass was casual and involuntary, or committed under the belief that the land belonged to the trespasser, or where the wood was taken by the authority of highway officers for the purposes of a highway, in which case the damages are a sum equal to the actual detriment.'

"Thus it is seen that the statute provides a specific manner in fixing the amount of damages for the removal or wrongful injury to trees or underwood upon the land of another.

"It is true that there may be cases where it may be impossible to fix a standard of value upon the timber removed or damaged, but there are other means of establishing a value on ornamental or shade trees.

"Section 6007, supra, is in the nature of punitive or exemplary damages, in that it provides that the amount of recovery may be three times the detriment caused by the wrongdoer."

One can readily understand that when a statute singles out the trespasses of those who were not actuated by a perverse purpose and makes them liable for only actual damages while providing that all others should pay treble damages, the provision for the multiple recovery is penal in nature.

*Denison v. Tocker,* 55 NM 184, 229 P2d 285, held that a provision of the Federal Housing and Rent Act, which permits the recovery of treble damages together

with an attorney fee from any landlord whose charges exceed those permitted by the act, was remedial and not punitive. In reaching its conclusion, the court quoted in part from a Federal decision, which said:

"" * * The Act creating this remedy is highly remedial, and the plain purpose of § 205 authorizing recovery of three times the amount of an overcharge was to enlist the help of tenants by soliciting their aid in filing suits against overcharging landlords."

The court seemed likewise persuaded that, since the recovery was sought by an individual and not by the Government, the proceeding was not penal.

*Read v. The Inhabitants of Chelmsford*, 33 Mass 128, was an action to recover damages for a personal injury which the plaintiff sustained as a result of the defendants' negligent failure to maintain in a safe condition a public thoroughfare. A statute authorized the recovery, under those circumstances, of double damages. The following is taken from the decision:

"In penal actions, which bear a close analogy to indictments, great strictness is required; and if this were a penal action, the current of the authorities would support the objection. But this great strictness is confined to indictments, informations, and actions on penal statutes, and is not to be extended to actions on remedial statutes. That this action is founded on a clause of the statute, which is merely remedial, is very clear. For as *Ashhurst* J. says, in the case of *Woodgate* v. *Knatchbull*, 2 T. R. 154, it has been held in many instances, that where a statute gives accumulative damages to the party grieved, it is not a penal action. So it has been held, that an action given by statute to the party grieved is not within the statute limiting the time for the bringing of actions on penal statutes. On this distinction this case may be decided for the plaintiff, without questioning the numerous authorities which

have been cited in support of the last objection, which is altogether technical, and which, even in a penal action, would have nothing to sustain it but authority."

*Hall v. Hall,* 112 Me 234, 91 A 949, construed a Maine statute which, according to the decision, provided that "if a tenant in common of undivided lands cuts down or carries away timber or wood, without first giving 30 days' written notice to his cotenants, he shall forfeit three times the amount of damages". The court held that the statute was remedial. In so doing, it indulged in the following review of its earlier holdings:

"In Frohock v. Pattee, 38 Me. 103, an action under a statute to recover double damages for knowingly aiding a debtor in the fraudulent transfer or concealment of his property, the same special statute of limitations was set up in defense as has been in this case. The court, holding the double damage statute to be remedial and not penal, said that under R. S. 1841, c. 146, §§ 15 and 16, which are now R. S. 1903, c. 83, § 97, being the special statute of limitations invoked in this case, only such statutes were to be considered penal statutes as would authorize the commencement of a suit, indictment, or information in the name and for the use of the state, and that the double damage statute was not such a statute. In Black v. Mace, 66 Me. 49, it was held that a statute (R. S. c. 97, § 11) giving treble damages for trespassing upon grass lands was remedial and not penal. Quimby v. Carter, 20 Me. 218; Philbrook v. Handley, 27 Me. 53; Thacher v. Jones, 31 Me. 528; Reed v. Northfield, 13 Pick. (Mass.) 94, 23 Am. Dec. 662. A statute giving a right to recover multiplied damages may be remedial or it may be penal, within the meaning of this statute of limitations. If the right of action be given to the injured party, and the increased damages are only incidental to the general right to recover, the statute and action are remedial. And it is immaterial

whether the statute says that the injured party may recover, or that the offending party shall forfeit to the injured party; the meaning is the same. But, if the right of action be given to others than the injured party, the statute and action are penal. See Cole v. Groves, 134 Mass. 471; In re Barker, 56 Vt. 14. R.S.c. 97, § 5, under which this action was brought, clearly is a remedial statute to which the one-year limitation pleaded does not apply.''

*Brady v. Daly,* 175 US 148, 44 L ed 109, 20 SCt 62, was based upon a violation of a dramatic copyright. The governing statute provided:

"Any person publicly performing or representing any dramatic composition for which a copyright has been obtained, without the consent of the proprietor thereof, or his heirs or assigns, shall be liable for damages therefor, such damages in all cases to be assessed at such sum, not less than one hundred dollars for the first, and fifty dollars for every subsequent performance, as to the court shall appear to be just.''

The court held that the provision for recovery of not less than $100 for the first infraction and $50 for each subsequent one was remedial. We take the following from the decision:

"* * * It is evident that in many cases it would be quite difficult to prove the exact amount of damages which the proprietor of a copyrighted dramatic composition suffered by reason of its unlawful production by another, and yet it is also evident that the statute seeks to provide a remedy for such a wrong and to grant to the proprietor the right to recover the damages which he has sustained therefrom.

"The idea of the punishment of the wrongdoer is not so much suggested by the language used in the statute as is a desire to provide for the recovery by the proprietor of full compensation from the wrong-

doer for the damages such proprietor has sustained from the wrongful act of the latter. In the face of the difficulty of determining the amount of such damage in all cases, the statute provides a minimum sum for a recovery in any case, leaving it open for a larger recovery upon proof of greater damage in those cases where such proof can be made. The statute itself does not speak of punishment or penalties, but refers entirely to damages suffered by the wrongful act.

\* \* \* \* \*

" '\* \* \* As said by Mr. Justice Ashhurst in the King's Bench, and repeated by Mr. Justice Wilde in the Supreme Judicial Court of Massachusetts, "it has been held, in many instances, that where a statute gives accumulative damages to the party grieved, it is not a penal action.'' Woodgate v. Knatchbull, 2 T. R. 148, 154; Read v. Chelmsford, 16 Pick. 128, 132.' \* \* \*

"Where the statute provides in terms, as the one before us does, for a recovery of damages for an act which violates the rights of the plaintiff, and gives the right of action solely to him, the fact that it also provides that such damages shall not be less than a certain sum, and may be more, if proved, does not, as we think, transform it into a penal statute.

\* \* \* \* \*

"Although punishment, in a certain and very limited sense, may be the result of the statute before us so far as the wrongdoer is concerned, yet we think it clear such is not its chief purpose, which is the award of damages to the party who had sustained them, and the minimum amount appears to us to have been fixed because of the inherent difficulty of always proving by satisfactory evidence what the amount is which has been actually sustained.''

It will be observed from the foregoing review that various reasons have persuaded the courts in reaching their conclusions as to whether multiple damages

awarded by statutes similar to ORS 105.815 are penal or compensatory. Decisions such as *Guild v. Prentis,* supra, are not persuasive in this jurisdiction where recoveries are deemed punitive even though the statute which authorized them is not criminal. See, for example, *Wilson et al. v. Kruse,* supra. Decisions such as *Michigan Land & Iron Co. v. Deer Lake Co.,* supra, construing the statute to mean that the wrongful taking must be prompted by a wilful design in order to entitle the victim to multiple damages, are not germane to ORS 105.815 because the latter contains no requirement of that kind. It will be observed that all of the decisions which construed statutes free from provisions for wilfulness reasoned that accumulative damages are not penal. They did so even though they inferred that an incidental result of the imposition of the multiple damages may deter others from offending in like manner. Likewise, the fact that the extraordinary award may give the wronged an incentive to assert his rights was not accepted as good reason for treating the award as penal.

■ We do not believe that the primary purpose of ORS 105.815 is to punish an offender. When a person, through a mistake concerning the location of a property line, fells a tree, he has done nothing for which a penalty ordinarily is imposed. If his action was not an honest mistake, ORS 105.810 renders it comparatively simple for the victim to prove wilfulness. Obviously, an adjacent property owner should not be required to maintain a constant watch lest nearby logging operations invade his property, but the double award, authorized by ORS 105.815, will not operate more effectively as a deterrent if it is deemed penal than if it is regarded as an award of accumulative damages. We think that the overriding purpose of ORS 105.815 is to award to

the victim of the trespass adequate damages. Its amerceable effect, if any, is secondary.

According to our belief, the legislature, in enacting ORS 105.815, accepted as the base for the award of damages in instances of wrongful, but nonwilful, destruction of trees, the victim's actual damages and then, by doubling that sum, granted him an accumulative recovery so that he would have something left in his pocket after he had discharged the expenses of the litigation. The award made in that manner may be deemed extraordinary damages or statutory-liquidated damages. If the legislature felt that such an award would have an effect similar to the imposition of smart money and thereby prompt loggers to be cautious as to dividing lines, the incidental effect cannot alter the basic nature of the award.

The words "penalty" and "damages", as we have seen, are not moored down to definite meanings. They have some of the characteristics of a bellows—they can expand and contract in dimension according to the will of the person who uses them. In holding that the legislature, through the enactment of ORS 105.815, wished the property owner to recover judgment in an amount sufficient to leave something for him after he had defrayed the costs of maintaining his suit, we have done, according to our belief, no injustice to the meaning of the word "damages".

The above disposes of all of the contentions advanced by the appellant. We have not mentioned every authority cited by the appellant, but all have received careful attention.

The decree and its accompanying judgment are affirmed.