PROST, Circuit Judge.
This case centers on an improper federal government sale of timber owned by the Confederated Tribes of the Warm Springs Reservation of Oregon (“the Tribes”) 14 years ago in 1990. The original trial in this case took place before the United States Court of Federal Claims seven years ago, and the first appeal in this case was decided three years ago.[1]
In The Confederated, Tribes of the Warm Springs Reservation of Oregon v. U.S., 248 F.3d 1365 (Fed.Cir.2001) (“Confederated Tribes I”) this court vacated a Court of Federal Claims determination that the Tribes could not receive a monetary judgment from the government based on the government’s alleged mismanagement of the Tribes’ timber. Noting that trust law imposed fiduciary obligations on the government to manage the Tribes’ timber in the Tribes’ best interests, we remanded this case to the Court of Federal Claims for a determination of three issues:
(1) the amount that the Tribes would have earned from the sale of the green timber that was improperly included in the blowdown sale;
(2) the amount of timber, if any, that was harvested under the logging contract but is missing from the BIA records and did not result in payment to the Tribes; and
(3) the amount of timber that was harvested in trespass, if any, and whether the BIA breached its duty to the Tribes by failing to prevent that trespass.
Confederated Tribes I, 248 F.3d at 1375-1376.
On remand, the Court of Federal Claims made a determination of the above three issues and assessed the amount of damages owed by the government to the Tribes for the mismanagement of the Tribes’ timber resources to be $13,805,607. We affirm.
*820 We have jurisdiction over this case under 28 U.S.C. § 1491.
DISCUSSION
On appeal, the government challenges three findings of the Court of Federal Claims: (a) the court’s damage award for improperly sold timber, (b) the court’s estimate of the amount of missing timber that did not result in payment to the Tribes, and (c) the court’s damages award for timber trespass. The government further alleges that the Court of Federal Claims abused its discretion in refusing to reopen the record on remand. We analyze each of these issues in turn.
1. The Amount The Tribes Would Have Earned From Improperly Sold Timber
The government argues that the Court of Federal Claims improperly estimated the amount of improperly sold timber, used the wrong sales period in estimating damages, and incorrectly awarded the Tribes lost profits for the improperly sold timber.
In determining the amount that the Tribes would have earned from timber improperly sold by the government in its Blowdown Sale, the Court of Federal Claims had to determine three things: the amount of timber improperly sold, the proper time period in which that timber would have otherwise been sold, and the prevailing price during that time period.
Regarding the volume of timber improperly sold, the Court of Federal Claims determined that 11.2 million net board feet were improperly sold by the government in the Blowdown Sale. The Confederated Tribes of the Warm Springs Reservation of Oregon v. U.S., No. 96-269 L, slip op. at 7 (Ct. Fed. Cl. filed June 20, 2002). It reached this determination after weighing the evidence offered by the Tribes and the government. As the Court of Claims found, the Tribes offered credible and consistent evidence of the volume of improperly sold timber based on stump cruises. In contrast, the government offered no consistent evidence on the amount improperly sold. Indeed, the government’s experts contradicted each other in their estimates of the amount of improperly sold timber.[2] The Court of Federal Claims’ factual determination on the amount of timber improperly sold was based on careful weighing of the evidence in the record and witness credibility.
In deciding when the improperly taken timber would have been sold, the Court of Federal Claims weighed two equally likely sales periods — the second and third quarters of 1992 and the second and third quarters of 1993. Given that the government breached its fiduciary duty to the Tribes in improperly selling their timber, the Court of Federal Claims properly placed the burden of proof of the proper sales period on the government. Because it found the sales periods suggested by the Tribes and the government to be equally plausible, the Court of Federal Claims found as a factual matter that the improperly sold timber would have been sold in the second and third quarters of 1993. See Donovan v. Bierwirth, 754 F.2d 1049, 1056 (2d Cir.1985).
*821 Finally, the Court of Federal Claims applied the market prices that prevailed on the export market during the second and third quarters of 1993, following this court’s directive that the Tribes be allowed to recover “the difference between the actual proceeds and the greatest appropriate revenue which should have been obtained.” Confederated Tribes I, 248 F.3d at 1371. The Court of Federal Claims did not improperly award “lost profits” or consequential damages. Rather it awarded the measure of damages that was mandated by this court in Confederated Tribes I.[3]
Factual determinations can only be reversed for clear error. Energy Capital Corp. v. U.S., 302 F.3d 1314, 1324 (Fed. Cir.2002); Fed.R.Civ.P. 52(a). A trial court’s credibility determinations are reviewed even more deferentially. Monon Corp. v. Stoughton Trailers, Inc., 239 F.3d 1253, 1263-1264 (Fed.Cir.2001), Anderson v. City of Bessemer City, 470 U.S. 564, 575, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). Given that the Court of Federal Claims properly applied the law and there was no clear error in the Court of Federal Claims’ factual determinations of the amount the Tribes would have earned from the improperly sold timber, the Court of Federal Claims’ determination on this issue and its award of $10,881,326 in damages is affirmed.
2. The Amount Of Missing Timber That Did Not Result In Payment To The Tribes
The government’s second argument on appeal asserts that the Court of Federal Claims wrongly determined the amount of missing timber that did not result in payment to the Tribes. The government argues that the court ignored substantial evidence and relied on the Tribes’ “systematically exaggerated” estimates.
In determining the amount of timber that did not result in payment to the Tribes, the Court of Federal Claims weighed estimates of the Tribes that it found “credible” against inadequately conducted government estimates. See The Confederated Tribes of the Warm Springs Reservation of Oregon v. U.S., No. 96-269 L, slip op. at 14-15 (Ct. Fed. Cl. filed June 20, 2002).
Given this imbalance in the evidence as well as the fact that the government must bear the cost of any detriment suffered by the Tribes because of the its own inadequate accounting practices, the Court of Federal Claims was, at the very least, not clearly erroneous in relying on the Tribes estimates for the missing timber not paid for and in awarding the Tribes $873,275 for the missing merchantable timber not properly accounted for. See Confederated Tribes I, 248 F.3d at 1375, Donovan, 754 F.2d at 1056.
3. The Amount Of Timber Harvested In Trespass
The government further argues before this court that the Court of Federal Claims overestimated the amount of timber harvested in trespass and also applied the wrong measure of damages for the timber harvested in trespass. The government maintains that the Court of Federal Claims erroneously awarded trespass damages for blowdown timber or properly removed damaged trees. It further con *822 tends that as a legal matter timber trespass damages should have been based on stumpage value of the trees taken in trespass at the time of trespass.
On the issue of timber trespass, the Court of Federal Claims awarded trespass damages to the Tribes for unmarked standing timber that was improperly-logged and taken. The Confederated Tribes of the Warm Springs Reservation of Oregon v. U.S., No. 96-269 L, slip op. at 15-16 (Ct. Fed. Cl. filed June 20, 2002).[4] Applying Oregon law, the Court of Federal Claims applied the log value of the logs taken in trespass as the measure of timber trespass damages. It then, pursuant to Oregon law, awarded double damages to all trees taken in trespass. See Or.Rev. Stat. § 105.815.
A review of Oregon law supports the Court of Federal Claims’ damage award. Though the issue of the proper measure of damages may be far from settled under Oregon law, Sinsel v. Henderson, 62 Or. App. 150, 660 P.2d 1072, 1074 n. 2 (1983) supports the Court of Federal Claims’ damage award. Sinsel suggests that the proper measure of damages for timber trespass is full compensation for actual loss, measured by actual value of the finished timber minus production costs. In this case, the actual loss to the Tribes was the revenue that they could have earned for the trespass timber on the export market in the second and third quarters of 1993 minus any related production costs. The Court of Federal Claims, therefore, applied the proper measure of damages to all timber taken in trespass by the government.[5]
4. The Court Of Federal Claims’ Refusal To Reopen The Evidentiary Record
Finally, the government also argues that the Court of Federal Claims abused its discretion in not reopening the evidentiary record on remand. In advancing its argument, however, the government overreaches in its characterization of this court’s remand instructions in Confederated Tribes I as requiring the Court of Federal Claims to reopen the record.
Reopening the evidentiary record on remand is in the sound discretion of the trial court and can only be reviewed for abuse of that discretion. Enzo Biochem, Inc. v. Calgene, Inc., 188 F.3d 1362, 1379-1380 (Fed.Cir.1999), Zenith Radio Corp. v. Hazeltine Research Inc., 401 U.S. 321, 331, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971). In deciding whether or not to reopen the record, a trial court considers the probative value of *823 the evidence proffered, the proponent’s explanation for failing to offer such evidence earlier and the likelihood of undue prejudice to the proponent’s adversary. See Blinzler v. Marriott Intern., Inc., 81 F.3d 1148, 1160 (1st Cir.1996). In this case, the government on remand offered evidence that was available to it at the time of the original 1997 trial. None of the evidence proffered on remand was the basis for any discovery motion or objection at the time of the original trial. Furthermore, the Court of Federal Claims found the evidence offered by the government to “not be useful.” The Confederated Tribes of the Warm Springs Reservation of Oregon v. U.S., No. 96-269 L, slip op. at 1 (Ct. Fed. Cl. filed April 2, 2002). After failing to object at trial and offering non-probative evidence on remand five years later, the government now attempts to make an appealable issue out of the Court of Federal Claims’ proper exercise of its discretion in refusing to re-open the evidentiary record on remand. Given the record, we reject the government’s argument that the Court of Federal Claims abused its discretion in failing to reopen the record for evidence that could have been introduced at trial and was of questionable probative value.
CONCLUSION
The Court of Federal Claims’ liability determinations and damage awards to the Tribes are affirmed.

. The central facts surrounding this case as well as the relevant portions of the Court of Federal Claims’ first opinion in this case were well explained in this court’s opinion in the previous appeal in this case. For that reason, they will not be repeated here. See The Confederated Tribes of the Warm Springs Reservation of Oregon v. U.S., 248 F.3d 1365, 1367-1370 (Fed.Cir.2001).

. The government experts alternatively claimed that 26% or 32% of the timber sold in the Blowdown Sale was improperly sold. At trial, government counsel urged the court to disregard the 26% figure. In its final answer, the government asserted only that the amount of green timber improperly sold was "a whole lot lower" than the Tribes' estimate of 52%. Given this uncertainty, the Court of Federal Claims found the Tribes’ estimate to be more credible than the government's. The Confederated Tribes of the Warm Springs Reservation of Oregon v. U.S., No. 96-269 L, slip op. at 7-8 (Ct. Fed. Cl. filed June 20, 2002).

. The government also makes much of the fact that it had no fiduciary duty to the Tribes' timber selling entity, the Warm Springs Forest Products Industries (''WSFPI''). As a result, the government argues, damages should not be calculated on the earnings lost by WSFPI but on the appraised value of the timber improperly sold. This argument has no merit. Because all of the earnings of the WSFPI are passed through to the Tribes, the losses to WSFPI due to the government’s improper sale of timber equal the Tribes' losses.

. Contrary to the government's assertions, the Court of Federal Claims did not award trespass damages for blowdown timber or properly felled trees. Id. at 15, n. 12. The government argues that the Court of Federal Claims incorrectly found that all timber designated for harvest must have been marked in blue paint in order to be properly logged. But the only examples of removed trees not marked with blue paint are the examples of blowdown trees that were marked with orange paint. As the Court of Federal Claims made clear, it did not award damages for marked blowdown trees. Instead, it awarded trespass damages for “unmarked or improperly marked” standing green timber that was improperly taken from the Tribes. See The Confederated Tribes of the Warm Springs Reservation of Oregon v. U.S., No. 96-269 L, slip op. at 15-16 (Ct. Fed. Cl. filed June 20, 2002).

. To support its argument that the Court of Federal Claims applied the wrong measure of timber trespass damages, the government cites inapplicable precedent from Washington State and the Court of Federal Claims. And the one Oregon case that it did cite, Kinzua Lumber Co. v. Daggett, 203 Or. 585, 595-597, 281 P.2d 221 (1995), did not explicitly hold that the proper measure of damages is stump-age value. Instead, that case was predominantly concerned with whether trespass damages are legal or equitable in nature.