Argued and submitted September 10, 1997, affirmed January 28, 1998

Fred DIAZ,
*Plaintiff,*

*and*

Javier PATINO,
an individual,
*Respondent,*

*v.*

William S. COYLE,
*Appellant.*

(94-10-396; CA A91149)

953 P2d 773

John T. Kaempf argued the cause for appellant. With him on the brief were R. Daniel Lindahl and Bullivant, Houser, Bailey, Pendergrass & Hoffman.

George W. Kelly argued the cause and filed the brief for respondent.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

Warren, P. J., dissenting.

## EDMONDS, J.

In this negligence action, plaintiff alleged that defendant's dog killed his livestock.[1] Defendant admitted liability, and a trial was held to establish plaintiff's damages. The jury awarded $6,950, but the trial court entered judgment for $13,900 pursuant to ORS 609.140(1), or double the amount found by the jury. Defendant objects to the amount of the judgment on the ground that the double damage provision in ORS 609.140(1) is a penalty provision subject to a three-year statute of limitations under ORS 12.100(2).[2] Because plaintiff's action was filed more than three years after his livestock was killed, defendant contends that ORS 12.100(2) bars recovery of double damages. We affirm.

The facts are not in dispute. Plaintiff filed a complaint in October 1994 alleging that in June 1991, defendant's dog killed plaintiff's livestock. ORS 609.140(1) provides:

> "The owner of any livestock which has been damaged by being injured, chased, wounded or killed by any dog shall have a cause of action against the owner of such dog for *the damages resulting therefrom, including double the value of any livestock killed and double the amount of any damage to the livestock*." (Emphasis supplied.)

ORS 12.100(2) provides,

> "An action upon a statute for penalty or forfeiture, where the action is given to the party aggrieved, or to such party and the state, excepting those actions mentioned in ORS 12.110, shall be commenced within three years."

The issue is to determine whether the legislature intended the double damages provision in ORS 609.140(1) to be compensatory or punitive in nature. We turn first to the text and context of the statute and focus on the phrase, "including double the value of any livestock killed and double the amount of any damage to the livestock." The word

---

[1] The livestock consisted of three purebred roosters, twelve purebred hens, thirty chicks and sixty fertile eggs.

[2] Defendant does not argue on appeal that the entire action is subject to the three-year statute of limitations. He objects only to the award of double damages.

"including" in a statute can indicate different meanings. First, it could connote an expansion of the word it modifies. *Premier Products Co. v. Cameron*, 240 Or 123, 125, 400 P2d 227 (1965). It can also describe "those things that are contained in or embraced by the term." *State v. Haynes*, 149 Or App 73, 76, 942 P2d 295 (1997). Here, the word "including" modifies the word "damages." The word "damages" is a generic word. It could connote compensatory damages that are intended to make the injured party whole or penalties that are intended to punish or deter a wrongdoer. If the word "including" in the context of ORS 609.140(1) connotes an expansion of damages beyond compensatory damages, then the statute provides for a penalty that falls within the purview of ORS 12.100(2). On the other hand, if the word "including" connotes an illustration of the kind of compensatory damages that are embraced by the word "damages," then the statute does not provide for a penalty, and plaintiff's double recovery is not barred by ORS 12.100(2).

In context with ORS chapter 609, the double damages provision in ORS 609.140(1) suggests that the legislature may have intended that the damages be compensatory in nature. "Double damages" were first made a part of ORS 609.140 in 1973. Or Laws 1973, ch 655, § 7. The current "double damages" language was enacted in 1975. Or Laws 1975, ch 749, § 1. At that time, ORS 609.100 provided that a county governing body, in setting fees for dog licenses, was authorized to "prescribe a penalty in an additional sum" in the event that a license was not procured on time. Also, ORS 609.060(3) provided for the imposition of a "penalty" for negligently permitting a dog to run at large in a dog control district. Those statutes demonstrate that, at the time that the legislature adopted the current version of ORS 609.140(1), it knew how to promulgate penalties and chose not to use that language in ORS 609.140(1).

This is not the first time that appellate courts in Oregon have wrestled with the issue of whether a double damage provision in a statute is compensatory or provides for a penalty. In *Kinzua Lbr. Co. v. Daggett et al*, 203 Or 585, 606-07, 281 P2d 221 (1955), the court held that a statute that awarded double damages for timber trespass was compensatory in nature. It reasoned that the legislature intended to

afford an adequate measure of damages for an injury for which it was difficult to ascertain what amount of compensation would make the injured party whole. Conversely, in *Nordling v Johnston*, 205 Or 315, 326-27, 283 P2d 994, 287 P2d 420 (1955), the court distinguished its holding in *Kinzua*, observing that the wage claim statute in that case expressly provided for a penalty amount of up to 30 days of wages in addition to the amount of wages earned and due.

Moreover, reference to the changes made to the statute in 1975 and the underlying legislative history removes any doubt that what is suggested by the statutory context is, in fact, what the legislature intended it to mean. The following changes were made by the 1975 amendments to ORS 609.140(1) (additions are in boldface while deletions are in brackets):

> "The owner of any livestock which has been damaged by being **injured, chased**, wounded or killed by any dog shall have a cause of action against the owner of such dog for [*double the amount of the damage*] **the damages resulting therefrom, including double the value of any livestock killed and double the amount of any damage to the livestock**." Or Laws 1975, ch 749, § 1.

The effect of the 1975 amendment regarding damages was to change the statute from a statute that provided a double recovery for all damages to a statute that provided only a double recovery for the value of the animal. Thus, expenses for medicine or veterinary care would no longer be subject to duplication under the current statute. The change is evidence that the legislature recognized the inappropriateness of a double recovery for liquidated or ascertainable expenses.

The legislative history underlying the amendment shows the following. Representative Stults and Senator Elizabeth Brown sponsored new legislation that was intended originally to amend ORS 609.140 by adding what would later become ORS 609.140(2). *See* Or Laws 1975, ch 749, § 1. While the new legislation was in committee, R.C. Owens, who represented sheep ranchers and livestock owners in Douglas and Lane County, proposed additional provisions to the amendment. He also presented a memorandum in support of the additions. *See* Memorandum in Support and Explanation of

Proposed Amendments to ORS 609.140, House Judiciary Committee, April 10, 1975, Ex A. Representative Kulongoski undertook to add Owens' proposal to the bill and explained to the House Judiciary Committee that he believed that the addition should be incorporated into the new legislation and that he agreed that the memorandum explained the effect of the addition. Tape Recording, House Judiciary Committee, April 10, 1975, Tape 13, Side 1 at 1552. He then read parts of the memorandum to the other committee members and distributed a copy to each member.

The memorandum prepared by Owens stated:

"3. 'Double damages' is a most appropriate measure in cases of this sort where the per-incident damage may be low and the inconvenience and expense of locating the owner and gaining compensation considerable."

Owens' memorandum also sums up what the state of the law would be after the proposed change:

"As a result of these changes, the Oregon Legislature will have gone a long way in *protecting* livestock owners in a comprehensive and fair manner. Operation of such a statute should give ranchers a much better chance of obtaining *adequate compensation for their losses* from dog-caused damage. Additionally, they would clarify an area of law, characterized by confusion, which would enhance the prospects for uniformity and predictability." (Emphasis supplied.)

A discussion by the House Judiciary Committee subsequently ensued about the memorandum and Owens' proposed additions. Tape Recording, House Judiciary Committee, April 10, 1975, Tape 13, Side 1 at 1552-1605; Tape Recording, House Judiciary Committee, April 23, 1975, Tape 17, Side 1 at 842-1200. The testimony before the committee and the comments of the legislators during those discussions do not reveal any dispute with the assertions made in the memorandum. Significantly, a discussion of "penalties" does not appear in the minutes of those hearings.[3] The measure of

---

[3] The court in *Nordling* thought it persuasive about legislative intent that in *Kinzua*, recovery could be had for a nonwillful act where there was difficulty in proving actual damages and the statute used the word "damages," whereas the wage claim statute used the word "penalty." *Nordling*, 205 Or at 327.

damages was discussed by the committee in terms of compensating owners of killed and injured livestock, and the committee concluded that it was more appropriate to double only the lost value of the livestock. Owens then drafted a different amendment to reflect the committee's discussion that had been based on the memorandum. Subsequently, the proposed bill was passed out of committee incorporating the language drafted by Owens and was approved by the legislature.

The dissent criticizes our use of the 1975 legislative history underlying ORS 609.140(1) and argues that only the 1973 legislative history is relevant. Before 1973, the statute provided for "full" damages for injured or killed livestock. In 1973, HB 2975 was introduced in the House Judiciary Committee, which proposed to changed the statute to provide for "double damages." Also, HB 2783, of which Representative Patterson was a sponsor, was introduced in the House Agriculture and Natural Resources Committee about the same time. It proposed to change the amounts for fines for violation of licensing requirements. The dissent relies on statements made by Judge Claude Hall, a witness before the House Agriculture and Natural Resources Committee, and Patterson in support of its position that the 1973 legislative history is controlling. Its reliance on Hall's statement is misplaced because his statement was made in reference to HB 2783 at a time when its provisions did not incorporate HB 2975 or change the existing statute as to the measure of damages. Hall's testimony was not and could not have been about the double damage provision proposed in HB 2975.

Additionally, Patterson's statement, in context, is not indicative of the intent of the entire legislature. While the bills were in committee, there was a successful motion to combine HB 2975 with HB 2783 by Representative Magruder, and, thereafter, HB 2783, which later became amended ORS 609.140(1), contained the "double" damage language. Minutes, House Committee on Agriculture & Natural Resources, April 27, 1973, p 9. There was no discussion at the time as to why the committee added the "double" damage language. Patterson was designated to carry the bill to the Senate Agriculture and Natural Resources Committee.

In the Senate Agriculture and Natural Resources Committee, a motion was made by Senator Ouderkirk to reinstate the word "full" into the bill. Minutes, Senate Committee on Agriculture & Natural Resources, June 13, 1973, p 2. Patterson objected, and it is his statement made in objection to the amendment on which the dissent also relies. The motion to amend subsequently failed, *id.* at 4, and the bill was ultimately passed out of the Senate Committee. Patterson's statement is at best a personal reaction to a proposed amendment to HB 2783. Because there is no record that the House Agriculture and Natural Resources Committee ever discussed the reason for adding the double damages provision from HB 2975 to HB 2783, his statement cannot be interpreted as speaking for the House Agriculture and Natural Resources Committee, nor can it be interpreted as the intent of the entire legislature regarding what the legislature intended by the "double" damage provision.

Beyond those two statements, the 1973 legislative history is uninformative about what the legislature intended regarding whether the "double" damages provision was meant to be compensatory. Whatever was intended by the 1973 legislature, the 1975 legislature dealt specifically with the double damage provision and its understanding of the words that it used in 1975 and which remain in effect, are instructive. *See Gaston v. Parsons*, 318 Or 247, 254, 864 P2d 1319 (1994) (the legislature's understanding of the word at the time that statute was adopted is dispositive, *unless* subsequent amendments have altered that meaning).

In sum, our review of the text, context and legislative history of the statute persuades us that the legislature intended the double damage provision in ORS 609.140(1) to be compensatory rather than punitive in nature. Accordingly, ORS 12.100(2) is inapplicable, and the trial court did not err.

Affirmed.

**WARREN, P. J.,** dissenting.

Because the majority ignores the relevant legislative history, emphasizes the irrelevant legislative history, and comes to the wrong conclusion, I respectfully dissent.

ORS 609.140(1) provides:

"The owner of any livestock which has been damaged by being injured, chased, wounded or killed by any dog shall have a cause of action against the owner of such dog for the damages resulting therefrom, including double the value of any livestock killed and double the amount of any damage to the livestock."

ORS 12.100(2) provides:

"An action upon a statute for penalty or forfeiture, where the action is given to the party aggrieved, or to such party and the state, excepting those actions mentioned in ORS 12.110, shall be commenced within three years."

The issue is whether the double damages contained in ORS 609.140(1) are punitive or compensatory in nature. If the double damages are punitive, the trial court erred in not applying ORS 12.100(2) to this action. The majority asserts first that the context of ORS 609.140(1) suggests that the legislature intended double damages to be compensatory. The majority points to two sections in ORS chapter 609 that specifically refer to "penalties." ORS 609.100(1) provides that a county governing body may "prescribe a penalty in an additional sum" in the event that a license was not procured; and ORS 609.060(3) provides a penalty for negligently permitting a dog to run at large. The majority infers from these statutes that "at the time that the legislature adopted the current version of ORS 609.140(1), it knew how to promulgate penalties and chose not to use that language." 152 Or App 253. This inference is speculative at best. First, neither ORS 609.100 nor ORS 609.060(3) involves the question before us: whether double damages imposed pursuant to ORS 609.140(1) are punitive. Second, neither statute relied on by the majority involves enhancement of actual damages. In other words, under the statutes relied on in the majority opinion as contextual support for its position, there are no actual damages on which to base a penalty. Under ORS 609.140(1), however, just as likely an inference could be drawn that the legislature simply wanted the penalty to reflect the actual damages incurred. Ultimately, a contextual analysis lends little, if any, support to the majority opinion.

The majority correctly points out that Oregon appellate courts have struggled with the issue of whether double damages, in other contexts, are punitive or compensatory. In *Kinzua Lbr. Co. v. Daggett et al*, 203 Or 585, 281 P2d 221 (1955), the court held that double damages provided for in a statute involving nonwillful timber trespass are compensatory. Most significant to the *Kinzua* court was the lack of any intent element in the statute in question. The *Kinzua* court noted: "Far from employing words that evince a purpose to deal with wanton conduct and punish it, [the timber trespass statute] plainly indicates a legislative design for its application in cases wherein the offender had no evil purpose." *Id.* at 590.

The court emphasized that the statute, ORS 105.815, "repels any inference that it is concerned with *mens rea*," and that "no words [in the statute] suggest that one who inadvertently cuts a tree should be punished." *Id.* at 592-93. The court explained, "We know of no reason for believing that the legislature, in adopting ORS 105.815, viewed the 'casual or involuntary' cutting of trees with such grave aversion that it wanted those who felled trees in that manner subjected to a penalty." *Id.* The court next discerned a compensatory reason for double damages.

The court generalized that "[a]lthough the general purpose of the law is to award just compensation to the victim of a wrong, it is well known that full compensation is not always made." *Id.* at 595. It emphasized such factors relating to a civil action as inconvenience, annoyance, preparation for trial, loss of time and payment of an attorney fee,[1] all of which are under-compensated in a nominal award of "costs." *Id.* at 596. More specifically, the court emphasized the unique loss that results from the cutting of standing timber. Timber may take half a century to mature. If cut before maturity, the true value may not be realized. Additionally, throughout the life of a tree, several cycles of high and low prices will most likely occur. If timber is felled during a low price cycle, again its true value is not represented. "A wrongful act committed under such circumstances might deprive the owner of an

---

[1] ORS 105.815 was amended in 1995 to award attorney fees and reforestation costs in addition to double damages. Or Laws 1995, ch 721, § 2.

asset which, years hence, under favorable conditions, would have made him a wealthy man." *Id.*

The court surmised that these considerations "may have caused the legislature to adopt ORS 105.815 in an effort to give the victim of the wrongful act adequate damages." *Id.* at 597. It concluded that, "We do not believe that the primary purpose * * * is to punish an offender. * * * We think that the overriding purpose * * * is to award to the victim of the trespass adequate damages. Its amerciable effect, if any, is secondary." *Id.* at 606-07. Although the court considered possible legislative motives, no mention was made of legislative history in the court's decision.

*Kinzua* is distinguishable from this case. Its emphasis on the fact that the timber trespass statute contains no *mens rea* has no application here. We are dealing with a strict liability statute that, because it is strict liability for the actions of dogs, could not possibly contain a *mens rea*. Additionally, because there is no *mens rea* requirement in the timber trespass statute, there could be no deterrent effect. In other words, because the statute is designed to compensate owners of timber whose trees are harvested "inadvertently," there could be no deterrent effect by awarding double damages. In this case, however, as will be shown subsequently, the legislative history reveals the intent of the legislature to deter dog owners from allowing their dogs to run free and harm livestock. This deterrent purpose can only be considered punitive. As such, *Kinzua* does not hold that all double damages are necessarily compensatory, and its holding should be confined to the specific statute in question there.

More persuasive and relevant to our discussion here is the court's holding in *Mozorosky v. Hurlburt*, 106 Or 274, 290, 198 P 556 (1923), and our holding in *Riddle v. Eugene Lodge No. 357*, 95 Or App 206, 768 P2d 917 (1989). In *Mozorosky*, the court was presented with a statute that allowed losers in illegal gambling operations to recover double the amount lost from the owner or organizer of the gambling operation. Or Laws 1920, § 8264 (now ORS 30.740).[2] The court held:

_____
[2] ORS 30.740 provides:

"All persons losing money or anything of value at or on any unlawful game described in ORS 167.117, 167.122 and 167.127 shall have a cause of action to

"Yet the law, in its anxiety for the common welfare, invites every man who loses money at a gambling game to repent, and offers him a remedy to recover that which he has lost; and * * * for the further purpose of penalizing and discouraging gambling, permits the loser to recover double that which he has lost. He recovers the equivalent of what he lost, as compensation. The amount in excess thereof may be deemed a penalty." *Mozorosky*, 106 Or 289.

The issue in *Mozorosky*, however, was not whether the double damages provision was a penalty. The quoted material was dictum. Nonetheless, we adopted the reasoning of *Mozorosky* in *Riddle*, where the issue *was* whether the double damages provision created a penalty. In *Riddle*, as in this case, the issue was whether ORS 12.100(2), the three-year statute of limitations for penalty actions, applied. We held, relying on *Mozorosky*, that the double damages created a penalty and that the three-year statute of limitations was triggered. *Riddle*, 95 Or App at 212. The significant aspect of both *Mozorosky* and *Riddle* is that the statute in question there contained an obvious deterrent purpose, as opposed to the statute considered in *Kinzua*. The statute before this court also contains such a deterrent purpose, as evident from the legislative history.

The majority makes two mistakes in its analysis of the legislative history. First, it ignores the intent of the 1973 legislature, which drafted and passed the double damages provision; and second, it relies excessively on legislative history from the 1975 legislature, which simply amended the original double damages section.

ORS 609.140(1) was passed as part of a general dog licensing bill, HB 2783, introduced in the 1973 Legislature.[3] Or Laws 1973, ch 655, §§ 1440-43. Two comments made during the committee hearings are relevant. First, in response to

recover from the dealer winning the same, or proprietor for whose benefit such game was played or dealt, or such money or thing of value won, twice the amount of the thing of value won, twice the amount of the money or double the value of the thing so lost."

[3] The double damages provision began as HB 2975. However, by an amendment in the House Agriculture and Natural Resource Committee, it was adopted into HB 2783. HB 2975 was ultimately tabled in the House Judiciary Committee.

an attempt to strike the double damages provision, Representative Peterson, the sponsor of the bill, stated: "One of the real nuisances [of dogs] is they do chase and kill livestock. [This] serves as a real good tool to encourage people to keep dogs locked up." Tape recording, Senate Agriculture and Natural Resources Committee, June 13, 1973, Tape 22, Side 2 at 0-380. Additionally, a major proponent of the bill, Judge Hall, in written testimony before the House Committee, wrote: "We must provide a stiff penalty for a person who refuses to cooperate on a dog nuisance situation, as well as one that kills livestock." Minutes, House Agriculture and Natural Resources Committee, April 10, 1973, Exhibit 2, p 2. The first statement, by Representative Peterson, clearly identifies the deterrent purpose of double damages, and the second, by Judge Hall, identifies a punitive purpose. Nothing in the 1973 legislative history portrays double damages as somehow being "compensatory."

The majority ignores this legislative history. The only legislative history relating to double damages passed by the 1973 legislature has been referred to above and reflects a punitive and deterrent purpose.

Further, the majority relies exclusively on legislative history from the 1975 legislature, which simply amended ORS 609.140.[4] House Bill 2985, introduced in the 1975 legislature, amended ORS 609.140 in ways intended to increase the potential for owners of livestock harmed by dogs to recover.[5] *See* Minutes, House Judiciary Committee, HB 2985,

---

[4] The following changes were made by the 1975 amendments to ORS 609.140(1) (additions are in boldface while deletions are in brackets):

"The owner of any livestock which has been damaged by being **injured, chased,** wounded or killed by any dog shall have a cause of action against the owner of such dog for [double the amount of the damage] **the damages resulting therefrom, including double the value of any livestock killed and double the amount of any damage to the livestock.**" General Laws of Oregon, ch 749, § 1 (1975).

Arguably, the original doubling provision applied to all damages recoverable. Pursuant to the 1975 amendments, however, doubling only applies to those damages directly relating to injury to livestock. Presumably, expenses such as veterinarian bills, repair to fences, etc., would not be doubled. The changes could easily be interpreted to be clarifing rather than modifying ORS 609.140(1).

[5] This entire bill was intended to make recovery more likely for livestock owners. It is not surprising to find in its legislative history remarks pertaining to compensation.

April 10, 1975, Appendix A, p 1 (memorandum in support and explanation of proposed amendment to ORS 609.104). The majority of those changes are not relevant to our discussion here. Specifically, the changes to ORS 60.140(1), the double damages provision, were minimal and did not disturb the fact that livestock owners could receive double the damages to their livestock.

A memo to the House Judiciary Committee supporting the proposed amendments, and relied on by the majority, explained that " '[d]ouble damages' is a most appropriate measure in cases of this sort where the per incident damage may be low and the inconvenience and expense of locating the owner and gaining compensation considerable." 152 Or App 255. This should not cause us to alter our understanding of the 1973 legislature's intent for several reasons.

First, the quoted language from the memo states only that double damages is the most appropriate measure of damages. It sheds no light on what those legislators who passed the double damages provision two years earlier intended. As shown above, it appears that the 1973 Legislature passed the double damages with a punitive and deterrent purpose. The changes made in 1975 were made by an entirely different committee, the judiciary, and nothing from that history reveals that the committee even considered the intent of the 1973 Agriculture and Natural Resources Committee that passed the double damages provision. The 1975 House Judiciary committee's assumption that that provision was compensatory should not cause this court to ignore the punitive and deterrent purpose of the 1973 Legislature.

Furthermore, in the same memorandum, the writer pointed out that the damages section was adopted from *United States v. Firchau*, 234 Or 241, 380 P2d (1963), and concluded that the double damage provision addressed in *Firchau* acted as a deterrent and had a punitive intent.[6] *See* Memorandum in Support and Explanation of Proposed

---

[6] The drafter's understanding of *Firchau*, however, was mistaken. That decision dealt with the same double damages provision as in *Kinzua*. The court in *Firchau* specifically cited *Kinzua* and held that the double damages were compensatory. For our purposes, however, the fact that the drafter thought the double damages provision was punitive is significant.

Amendments to ORS 609.140, House Judiciary Committee, April 10, 1975, Ex A. The contradiction is apparent. Significantly, the writer of the memo suggested that the double damages provision acted as a deterrent and was punitive.

Second, the view of subsequent legislators on the intent of previous enactments is of dubious value. As the Supreme Court stated: "The views legislators have of existing law may shed light on a new enactment, but it is of no weight in interpreting a law enacted by their predecessors." *DeFazio v. WPPSS*, 296 Or 550, 561, 679 P2d 1316 (1984). Additionally, we have said that subsequent statements by legislators are not probative of the intent of statutes already in effect. *United Telephone Employees PAC v. Secretary of State*, 138 Or App 135, 139, 906 P2d 306 (1995). In other words, if we were interpreting the amendments themselves in the context of a preexisting law, the subsequent legislative history might be relevant. Here, however, we are interpreting whether double damages were punitive when enacted in 1973. Although the 1975 amendments clarified what the double damages provision applied to, it could not, and did not, change the intent of the 1973 Legislature when it passed ORS 609.140(1).[7]

The majority errs by not finding that the double damages provision in ORS 609.140(1) is penal and subject to the three-year statute of limitations provided in ORS 12.100(2). The trial court erred in awarding plaintiff double damages.

I dissent.

---

[7] "The legislature's understanding of the word[s it uses] at the time that statute was adopted is dispositive, unless subsequent amendments have altered that meaning." *Gaston v. Parsons*, 318 Or 247, 254, 864 P2d 1319 (1994).