Argued and submitted June 21, 2016; remanded for resentencing, otherwise affirmed May 24; on appellant's petition for reconsideration filed June 7, reconsideration allowed by opinion August 9, 2017 See 287 Or App 236, 399 P3d 491 (2017)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CORINA SHOCKEY,
*Defendant-Appellant.*

Wasco County Circuit Court
1400114M; A158354

398 P3d 444

Erin Snyder, Deputy Public Defender, argued the cause for appellant. With her on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Timothy A. Sylwester, Assistant Attorney General, argued the cause for respondent. With him on the brief were

Ellen F. Rosenblum, Attorney General, and Paul L. Smith, Deputy Solicitor General.

Before Ortega, Presiding Judge, and Lagesen, Judge, and Garrett, Judge.

## LAGESEN, J.

For having a dead red-tailed hawk in her freezer, defendant was charged with unlawful possession of a raptor, ORS 498.002,[1] a charge to which defendant pleaded guilty.[2] Over defendant's objection, the trial court ordered defendant to pay $2,000 in restitution to the Oregon Department of Fish and Wildlife (ODFW), under ORS 137.106. The court did so, even though the state presented no evidence that the hawk found in defendant's freezer had a value of $2,000, or that defendant's conduct of possessing the hawk otherwise caused ODFW to suffer a monetary loss of $2,000. It concluded that ORS 496.705[3]—

---

[1] ORS 498.002(1) states, "Wildlife is the property of the state. No person shall angle for, take, hunt, trap or possess, or assist another in angling for, taking, hunting, trapping or possessing any wildlife in violation of the wildlife laws or of any rule promulgated pursuant thereto." ORS 496.992(1) generally makes each violation of a provision of the wildlife laws, or the rules promulgated under them, a Class A misdemeanor. The "wildlife laws" consist of ORS chapters 496, 497, 498, and 501. ORS 496.002 (so stating). Although the misdemeanor complaint did not identify what wildlife law or rule defendant's possession of the hawk violated, it appears that the state's theory of the case likely was that defendant's conduct violated *former* OAR 635-044-0130 (Aug 6, 2012), which generally makes it unlawful to possess "nongame birds." The complaint's failure to identify the specific wildlife law defendant was alleged to have violated is not at issue in this appeal, and we express no opinion on that matter.

[2] Because defendant's case was resolved by a guilty plea, the facts about why defendant had a dead red-tailed hawk in her freezer were not developed below. In her sentencing memorandum, defendant attributed the hawk's presence to an ex-boyfriend.

[3] Pertinent to this appeal, ORS 496.705 provides:

"(1) The State Fish and Wildlife Commission may institute suit for the recovery of damages for the unlawful taking or killing of any of the wildlife referred to in subsection (2) of this section that are the property of the state.

"(2)(a) The damages referred to in subsection (1) of this section are as follows:

"* * * * *

"(T) Each bald eagle, golden eagle, goshawk, osprey, peregrine falcon or any other raptor listed as a threatened species or an endangered species by the commission by rule, $5,000.

"(U) Each raptor except those specified in subparagraph (T) of this paragraph, $2,000."

ORS 496.705 was amended in 2016, after restitution was awarded; however, because those amendments do not affect our analysis we refer to the current version of the statute in this opinion.

Although the statute confers authority on the State Fish and Wildlife Commission to institute civil suits under ORS 496.705, the commission has delegated that authority to the director of ODFW. OAR 635-001-0025. For that

which authorizes ODFW to file a civil suit to recover statutorily prescribed "damages" for the unlawful taking or killing of specified wildlife—establishes the values of different wildlife (including raptors) for purposes of ORS 137.106, thereby supplanting the state's ordinary burden to prove, with evidence, the value of any economic loss suffered by a crime victim for which restitution is sought.

On appeal, defendant assigns error to the trial court's restitution award, contending that the court erred in concluding that ORS 496.705 supplies the values of raptors for purposes of restitution under ORS 137.106. The state argues to the contrary that ORS 496.705 represents a "legislatively prescribed valuation [that] suffices to establish the 'economic damages' that may be recovered as restitution under ORS 137.106." We conclude that ORS 496.705 does not establish the values of wildlife for purposes of ORS 137.106. We therefore remand for resentencing because the record contains no other evidence to support the court's restitution award.

The issue before us is a legal question: Does ORS 496.705, the wildlife civil suit statute, supply the values of wildlife for purposes of ORS 137.106, the criminal restitution statute? We therefore review for legal error. *State v. Ferrara*, 218 Or App 57, 67-68, 178 P3d 250, *rev den*, 344 Or 539 (2008). Because our objective is to ascertain the legislature's intentions by examining the text, context, and legislative history of the pertinent statutory provisions, turning to relevant maxims of construction if necessary, *Chase and Chase*, 354 Or 776, 780, 323 P3d 266 (2014), our ultimate task is to determine whether the legislature intended for ORS 496.705 to establish the valuations of wildlife for the purposes of ORS 137.106.

ORS 137.106 provides the authority for an award of restitution in a criminal case. It allows for restitution to be awarded for some types—but not all types—of damages suffered by a crime victim. Specifically, restitution may be awarded for a crime victim's "economic damages," as that

---

reason, we refer to ODFW, rather than the commission, for the remainder of this opinion.

term is defined in ORS 31.710,[4] provided that the state presents evidence that proves those "economic damages":

> "When a person is convicted of a crime, or a violation as described in ORS 153.008, that has resulted in economic damages, the district attorney shall investigate and present to the court, at the time of sentencing or within 90 days after entry of the judgment, evidence of the nature and amount of the damages. The court may extend the time by which the presentation must be made for good cause. If the court finds from the evidence presented that a victim suffered economic damages, in addition to any other sanction it may impose, the court shall enter a judgment or supplemental judgment requiring that the defendant pay the victim restitution in a specific amount that equals the full amount of the victim's economic damages as determined by the court. The lien, priority of the lien and ability to enforce the specific amount of restitution established under this paragraph by a supplemental judgment relates back to the date of the original judgment that is supplemented."

ORS 137.106(1)(a).

As is evident, nothing in that text supports the state's position that the legislature intended for a criminal court to use statutory damages set in ORS 496.705 to value wildlife for purposes of ORS 137.106. On the contrary, three salient features of ORS 137.106(1)(a) affirmatively counter the state's position.

First, by its terms, the statute does not permit an award of restitution for damages other than those that meet the definition of "economic damages." *State v. Ramos*, 358 Or 581, 590-95, 368 P3d 446 (2016) (discussing legislative history of ORS 137.106, and the types of damages that are,

---

[4] ORS 137.103(2) explains that, "'[e]conomic damages' *** [h]as the meaning given that term in ORS 31.710, except that 'economic damages' does not include future impairment of earning capacity." ORS 31.710 provides:

"'Economic damages' means objectively verifiable monetary losses including but not limited to reasonable charges necessarily incurred for medical, hospital, nursing and rehabilitative services and other health care services, burial and memorial expenses, loss of income and past and future impairment of earning capacity, reasonable and necessary expenses incurred for substitute domestic services, recurring loss to an estate, damage to reputation that is economically verifiable, reasonable and necessarily incurred costs due to loss of use of property and reasonable costs incurred for repair or for replacement of damaged property, whichever is less."

and are not, recoverable as restitution). That limitation on the types of damages recoverable as restitution suggests that the legislature did not intend for the restitution statute to provide more broadly a mechanism for statutorily prescribed damages, such as those contained in ORS 496.705. That is because statutory damages can serve purposes other than compensating solely for "objectively verifiable monetary losses," unlike the economic damages available under ORS 137.106. *Id.* As we have explained, "[t]he word 'damages' is a generic word. It could connote compensatory damages that are intended to make the injured party whole or penalties that are intended to punish or deter a wrongdoer." *Diaz v. Coyle*, 152 Or App 250, 253, 953 P2d 773 (1998). Thus, without a specific indication from the legislature of an intention to classify a particular type of statutory damages as "economic damages," it is difficult to conclude that statutorily prescribed damages qualify as "economic damages" under ORS 137.106, or that the legislature otherwise intended to permit the amount of damages recoverable under a statute to dictate the value of economic damages to be awarded as restitution.

Here, there is no specific indication that the legislature intended to classify the statutory damages recoverable by ODFW under ORS 496.705 as "economic damages." And to the extent the legislative history is probative on the matter, it tends to show that the statutory damages prescribed by ORS 496.705 were intended to serve multiple objectives, including punishing and deterring the unlawful taking of wildlife, while also compensating the state for the loss of that wildlife.[5] Given that apparent mix of purposes, ORS

---

[5] In particular, the legislative history surrounding the addition of the current $2,000 damage award for raptors in ORS 496.705(2)(a)(U)—which represented an increase from $50 damages for raptors—indicates that the call for a higher amount of damages for these birds of prey was largely in response to the increasing number of raptors being killed either for "fun" or for the purpose of keeping "roller pigeons" safe. *See* Exhibit 17, Senate Environment and Natural Resources Committee, HB 3089, May 26, 2009 (accompanying testimony of Bob Sallinger, Audubon Society). There was also testimony about the importance of birds of prey to ODFW and Oregon's economy, explaining that birds, especially birds of prey, warrant higher valuation because those birds are often the way that individuals are introduced to conservation and because birding brings tourists to Oregon every year. Audio Recording, Senate Environment and Natural Resources Committee, HB 3089, May 26, 2009, at 1:29.52 (testimony of Bob Sallinger, Audubon Society), http://oregon.granicus.com/MediaPlayer.php?clip_id=4968 (accessed May 15, 2017) (testifying that birds

496.705 damages are not susceptible to characterization as "economic damages," making it unlikely that the legislature intended for the damages amounts in ORS 496.705 to serve as a metric for establishing a crime victim's actual economic damages.

Second, ORS 137.106 requires *proof* of any damages sought, demanding that the district attorney present *evidence* to support any restitution claimed. *See State v. Harrington*, 229 Or App 473, 477, 211 P3d 972, *rev den*, 347 Or 365 (2009) (reversing as plain error the imposition of $5,835.40 in restitution for a robbery case, when the only evidence presented by the state was that specific items had been stolen from the victim, but nothing about the value of those items); *see also State v. Islam*, 359 Or 796, 807, 377 P3d 533 (2016) (concluding that, in theft case, retail seller was not entitled to restitution for lost profits absent evidence that seller incurred lost profits). But, a statutorily prescribed value is not "evidence" in the ordinary sense of the word. Therefore, the specific requirement for the provision of evidence also suggests that the legislature did not intend for a criminal court to look solely to statutorily prescribed values when awarding restitution under ORS 137.106.

Third, ORS 137.106 contains no exceptions to the requirement that the district attorney prove any claimed restitution with evidence. For us to conclude that the statute operates in the manner advocated by the state would require us either to read into ORS 137.106 an exception that the legislature did not include (an exception from the state's general obligation to prove economic damages in situations in which the legislature has provided for statutory damages), or to omit from ORS 137.106 the otherwise applicable requirement that the state prove restitution through evidence. Either way, accepting the state's argument would

---

of prey need to have higher damages assigned to them because they are charismatic, bring money into the state of Oregon through birding, are a significant area of focus of conservation, and Oregon has expended a significant amount of money bringing birds of prey back). Finally, there was also testimony that there were ongoing issues at the time with people hunting birds for feathers and talons, and then selling those parts illegally, justifying an increase in the amount of statutory damages for raptors specifically. *Id.*

require us to do what the legislature has commanded judges not to do:

> "In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted[.]"

ORS 174.010. We heed that legislative command here. If the legislature intended for ORS 496.705 to supply the values of wildlife for the purposes of ORS 137.106, it would have been simple enough for the legislature to have said so itself.

In advocating for a different conclusion, the state points to ORS 164.115(4), which sets out how to ascertain the value of property for property crimes. It provides:

> *"For the purposes of chapter 743, Oregon Laws 1971,*[6] the value of property shall be ascertained as follows:
>
> "* * * * *
>
> "(4)   The value of the wildlife listed in ORS 496.705 is the amount of damages as specified in ORS 496.705."

(Emphasis added.) The state argues that that statute demonstrates that the legislature intended for the damages specified in ORS 496.705 to serve as the value of wildlife for purposes of ORS 137.106.

That argument has two problems. The first problem, as shown by the emphasized wording, is that ORS 164.115(4) does not apply to ORS 137.106. As the Supreme Court explained in *Islam*, "[ORS 164.115], by its terms, applies to statutes that were part of the 1971 criminal code, and ORS 137.106, the restitution statute at issue in this case, was not part of the 1971 criminal code." 359 Or at 806 n 4. The second problem is that ORS 164.115(4) demonstrates that, when the legislature intends for the values specified in ORS 496.705 to play a role in the criminal justice process, it says so expressly. In other words, had the legislature intended ORS 496.705 to supply the values of wildlife for the purposes of ORS 137.106, we think that it would have said so explicitly, much as it did when it provided in ORS 164.115(4)

---

[6] Chapter 743 of Oregon Laws 1971 substantially revised the Oregon criminal code.

that ORS 496.705 supplies the value of wildlife for purposes of statutory provisions enacted as part of the 1971 criminal code. As a result, ORS 164.115 does not advance the state's argument.

Alternatively, the state points to *Ramos* to support its argument that ORS 496.705 supplies the values of wildlife for purposes of ORS 137.106. But *Ramos* addressed different issues than that presented by this case. In *Ramos*, the Supreme Court was called upon to decide (1) whether economic damages must be a reasonably foreseeable consequence of a defendant's criminal conduct to be included in an award of restitution; and (2) whether certain attorney fees qualified as economic damages that could be included in an award of restitution. 358 Or at 604. The court did not address, let alone decide, the issue presented in this case, and we see nothing in *Ramos* that supports the state's contention that the legislature intended for ORS 496.705 to supply the values of wildlife for the purpose of assessing a crime victim's "economic damages" under ORS 137.106, thereby supplanting the state's obligation to prove such damages with evidence.

In short, the relevant statutes and their history do not support the state's argument that the legislature intended for the damages amounts in ORS 496.705 to supply the values of wildlife for purposes of assessing restitution in a criminal case under ORS 137.106. The trial court therefore erred when it ordered defendant to pay $2,000 in restitution to ODFW based on the statutorily prescribed damages amounts in ORS 496.705. Because the record otherwise lacks evidence to support the trial court's $2,000 valuation of the hawk, or evidence of the value of any other damages incurred by ODFW as a result of defendant's conduct that would support a $2,000 restitution award, we remand for resentencing.

Remanded for resentencing; otherwise affirmed.